**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| KELLY ANTEKEIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:17-cv-786 (TSE/TCB) |
| | ) |
| LABORATORY CORPORATION OF | ) |
| AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

THESE MATTERS come before the Court on Plaintiff's Petition for Award of Attorney's Fees and Costs (Dkt. 144), Plaintiff's Supplemental Fee Petition (Dkt. 159), and Plaintiff's Bill of Costs (Dkt. 173). Plaintiff seeks attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3), which provides that a court shall award reasonable attorney's fees, expert witness fees, and other costs to a plaintiff that has prevailed in her private cause of action against an employer under the Family and Medical Leave Act of 1993 ("FMLA"). On May 15, 2018, pursuant to 28 U.S.C. § 636(b)(1)(B), Senior U.S. District Judge T.S. Ellis, III, referred all requests for attorney's fees and costs to the undersigned U.S. Magistrate Judge to address.

The undersigned has considered the extensive briefing on the issue of Plaintiff's reasonable attorney's fees and costs.[1] Plaintiff now requests a total of $538,368.32 as her

---

1. The relevant filings before the Court include Plaintiff's Petition for Award of Attorney's Fees and Costs (Dkt. 144) ("Pl.'s Pet."), the Memorandum of Points and Authorities in Support of Plaintiff's Petition for Award of Attorneys' Fees and Costs (Dkt. 145) ("Pl.'s Mem. Supp."), the Declaration of Nicholas Woodfield (Dkt. 145-1) ("Woodfield Decl."), Plaintiff's Bill of Costs (Dkts. 146 & 173) ("Pl.'s Bill"), Defendant's Opposition to Plaintiff's Petition for Award of Attorneys' Fees and Costs (Dkt. 158) ("Def.'s Opp'n to Pet."), Plaintiff's Supplemental Fee

1

reasonable attorney's fees and costs in this matter, compromised of $481,271.00 in attorney's fees and $57,097.32 in costs. (Pl.'s Pet. at 1; Pl.'s Mem. Supp. at 20; Pl.'s Suppl. Pet. & Reply at 1.) In response, Defendant argues that Plaintiff is only entitled to an amount of attorney's fees and costs significantly less than her requested amount. (Def.'s Opp'n to Pet. at 10-11; Def.'s Suppl. Opp'n at 3.) For the following reasons, the undersigned recommends that Plaintiff be awarded a total of $395,375.23 in attorney's fees and costs, comprised of $391,590.85 in attorney's fees and $3,784.38 in costs.

## I. BACKGROUND

On July 11, 2017, Kelly Antekeier ("Plaintiff") filed her complaint against her former employer Laboratory Corporation of America ("Defendant") alleging two counts of FMLA violations: one for retaliation and one for interference. (Dkt. 1.) Since the filing of the case, Plaintiff has been represented by various attorneys with The Employment Law Group, P.C. ("TELG"). On August 30, 2017, Defendant answered the complaint, and a scheduling order was expeditiously issued by the Court. (Dkt. 6.) Pursuant to the Scheduling Order (Dkt. 8), the case proceeded through discovery, which ended on November 3, 2017, without either party filing a motion seeking the involvement of the Court in the discovery process.

On November 3, 2017, Plaintiff filed a motion for partial summary judgment on Defendant's affirmative defense on Plaintiff's supposed failure to mitigate her damages. (Dkt.

---

Petition and Reply to Defendants' Opposition to Petition for Award of Attorneys' Fees and Costs (Dkt. 159) ("Pl.'s Suppl. Pet. & Reply"), Defendant's Opposition to Plaintiff's Supplemental Fee Petition (Dkt. 162) ("Def.'s Opp'n to Suppl. Pet."), Plaintiff's Response to Defendant Opposition to Plaintiff's Supplemental Fee Petition and Reply to Defendant's Opposition to Petition for Award of Attorneys' Fees and Costs (Dkt. 169) ("Pl.'s Resp."), Defendant's Supplemental Opposition to Plaintiff's Petition for Award of Attorney's Fees and Costs (Dkt. 183) ("Def.'s Suppl. Opp'n"), Defendant's Opposition to Plaintiff's Bill of Costs (Dkt. 184) ("Def's Opp'n to Bill"), Plaintiff's Response to Defendant's Objections to Bill of Costs (Dkt. 187) ("Pl.'s Resp. to Bill), the Joint Brief of the Parties on Fees and Costs (Dkt. 192) ("Joint Br.") and all attachments and exhibits submitted with those filings.

18.) On November 17, 2017, Defendant filed a motion for summary judgment on both Plaintiff's FMLA retaliation claim and Plaintiff's FMLA interference claim, as well as on Plaintiff's claim for compensatory damages. (Dkt. 22.) On February 8, 2018, the Court issued its memorandum opinion and order on the motions for summary judgment. (Dkts. 74 & 75.) The Court denied Plaintiff's motion for partial summary judgment on Defendant's affirmative defense.[2] The Court granted in part and denied in part Defendant's motion for summary judgment, granting summary judgment with regards to Plaintiff's FMLA interference claim, but denying summary judgment with regards to Plaintiff's FMLA retaliation claim. Accordingly, Plaintiff's FMLA retaliation claim was postured to proceed to trial.

On January 5, 2018, while the motions for summary judgment were pending before the Court, Defendant filed two motions in limine that argued to exclude each of Plaintiff's two expert witnesses. (Dkts. 35 & 37.) One of the motions in limine involved the opinions of Dr. Phillip Bussey, a vocational rehabilitation expert, while the other involved Dr. Joel Morse, an economic expert. Ultimately, on May 1, 2018, the Court granted the motions in limine and excluded the opinions of Dr. Bussey and Dr. Morse. (Dkt. 109.) With regards to Dr. Bussey, the Court concluded that Dr. Bussey's vocational rehabilitation opinion was based purely on his unsupported speculation, and that Dr. Bussey's failure to cite any data or facts in support of his conclusions rendered his opinions unreliable and thereby inadmissible. With regards to Dr. Morse, the Court concluded that because Dr. Morse based his opinion on the unreliable estimates in Dr. Bussey's opinion, Dr. Morse's opinion was likewise unreliable and likewise was inadmissible.

---

2. The Court's original order on the motions for summary judgment incorrectly stated that Plaintiff's motion for partial summary judgment was granted; however, the Court corrected its error on April 18, 2018, via an amended order. (Dkt. 97.)

On May 8, 2018, the trial began, with the jurors being selected and the parties making their opening statements. During the trial, both parties adduced evidence, called witnesses, and utilized technology in bringing and defending their respective cases. On May 14, 2018, after five days of trial, both parties rested. Defendant argued an oral motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, which the Court denied. The parties then presented their closing arguments, and the jury began its deliberation. The next day, on May 15, 2018, the jury returned a verdict for Plaintiff and awarded her damages of $233,730.28.

After the jury reached its verdict, the Court ordered the parties to brief outstanding issues related to the amount awarded by the jury in the verdict. (Dkt. 130.) Defendant filed a memorandum arguing against liquidated damages and the awarding of front pay, as well as arguing for the awarding of only nominal damages. (Dkt. 132.) Plaintiff filed a memorandum arguing for liquidated damages, interest, and either equitable relief in the form of Plaintiff's reemployment with Defendant or the awarding of front pay. (Dkt. 133.) While the issues related to the amount awarded by the jury were pending, on June 12, 2018, Defendant filed a motion arguing for judgment as a matter of law or for a new trial pursuant to Federal Rules of Civil Procedure 50 and 59 on the basis of an erroneous jury instruction. (Dkt. 155.) On July 25, 2018, the Court denied Defendant's motion. (Dkt. 170.) On July 31, 2018, in a memorandum opinion, the Court decided to maintain the amount awarded by the jury verdict, and also award Plaintiff liquidated damages and pre-judgment interest, but the Court declined to award Plaintiff equitable relief or front pay. (Dkt. 171.) Final judgment in favor of Plaintiff was entered the same day as the memorandum, on July 31, 2018. (Dkt. 172.)

Also after the jury reached its verdict, the Court ordered the undersigned U.S. Magistrate Judge to prepare a Report and Recommendation addressing the awarding of attorney's fees and

costs. (Dkt. 130.) In preparing her petition for attorney's fees and costs, Plaintiff issued a subpoena seeking the billing records maintained by Defendant's law firm, Nixon Peabody LLP, related to this case. In response, Defendant filed a motion to quash Plaintiff's subpoena. (Dkt. 138.) After holding a hearing, the Court denied Defendant's motion to quash, but provided certain conditions for the parties to follow that still provided Defendant some relief from having to provide their billing records to Plaintiff. (Dkt. 151.) The parties also filed various briefs related to the issue of attorney's fees and costs for the Court's consideration. (Dkts. 144, 145, 146, 158, 159, 162, 169, 173, 183, 184, 187, & 192.) Upon considering the various briefs filed by the parties related to the issue of attorney's fees and costs, the undersigned has prepared her Report and Recommendation.

## II. LEGAL STANDARD

The FMLA provides that a court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee ... to be paid by the defendant." 29 U.S.C. § 2617(a)(3). When an award of attorney's fees and costs is appropriate, a court uses the lodestar method to determine the amount of fees to be awarded. See Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002) (stating that, for assessing fees, "the lodestar figure has, as its name suggests, become the guiding light"). The lodestar method involves "multiplying the number of reasonable hours expended times a reasonable rate." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013) (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009)). To determine a reasonable number of hours and a reasonable rate, a court within the Fourth Circuit considers factors that have become known as the Johnson factors:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;

(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorney's fees awards in similar cases.

See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). After determining a reasonable number of hours and a reasonable rate, a court is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and "award some percentage of the remaining amount, depending on the degree of success enjoyed." McAfee, 738 F.3d at 88 (citations and quotation marks omitted).

With regards to costs, upon the entry of a judgment, a court is generally to award costs to the prevailing party, unless a federal statute provides otherwise. See FED. R. CIV. P. 54(d)(1). The FMLA does require that a court "shall, in addition to any judgment awarded to the plaintiff, allow … reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). It is within a court's discretion to deny an award of costs, so long as the court articulates good reason for its denial. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). Such reasons may include "(1) misconduct by the prevailing party; (2) the unsuccessful party's inability to pay the costs; (3) the excessiveness of the costs in a particular case; (4) the limited value of the prevailing party's victory; or (5) the closeness and difficulty of the issues decided." Ellis v. Grant Thorton LLP, 434 F. App'x 232, 235 (4th Cir. 2011) (citing Cherry, 186 F.3d at 446). The reason to disallow costs must simply be based on "an element of injustice in a presumptive cost award." Cherry, 186 F.3d at 446.

6

### III. LEGAL ANALYSIS

As previously stated, a lodestar calculation addresses attorney's fees and requires determining a reasonable number of hours and a reasonable rate. Plaintiff asserts that, according to the lodestar calculation, she is entitled to recover a total of $481,271.00. (Pl.'s Suppl. Pet. & Reply at 1.) Defendant does not contend that Plaintiff's attorneys' hourly rates are excessive, nor does Defendant contend that the hours spent by Plaintiff's attorneys are excessive. Instead, Defendant argues that Plaintiff's total attorney's fee recovery should be minimized in accordance with the Johnson factors. (Def.'s Opp'n to Pet. at 4-6; Def.'s Opp'n to Suppl. Pet. at 2.) Accordingly, the Court first considers whether any reduction in Plaintiff's requested attorney's fees is appropriate in accordance with the twelve Johnson factors.

The first Johnson factor is time and labor expended. The amount of hours spent in total by Plaintiff's attorneys is not in dispute. The only dispute relates to whether and how much of a deduction there should be for the categories of attorney's fees as previously described, which the Court will address later in this Report and Recommendation.

The second Johnson factor is the novelty and difficulty of the questions raised. Here, there was nothing particularly unique about the claims in this case. The case involved typical FMLA interference and retaliation claims, which Plaintiff's counsel specializes in and which this Court hears routinely. Although the parties had a number of pretrial and post-trial motions, they did not present any significant questions of first impression or novelty.

The third Johnson factor is the skill required to properly perform the legal services rendered. Plaintiff's counsel is skilled in their representation of plaintiffs in these types of claims, but, as in the novelty and difficulty of the questions raised factor, there was nothing unique or novel about these claims that could make this factor affect the attorney's fees calculations.

7

The fourth <u>Johnson</u> factor is the attorney's opportunity costs in pressing the instant litigation. Here, there appears to be no significant opportunity costs to Plaintiff's attorneys. This case appears to be just another case in Plaintiff's counsel's practice. Plaintiff's counsel did not point to any other specific cases that it did not take in order to take this case to trial.

The fifth <u>Johnson</u> factor is the customary fee for like work. Here, again, the hourly rates for Plaintiff's counsel's work are not in dispute. However, it is necessary for the Court to still determine that the hourly rates are reasonable. The Court has consistently used what has become known as the <u>Vienna Metro</u> matrix in determining the customary rates for attorneys engaged in commercial litigation in the Northern Virginia area. The <u>Vienna Metro</u> matrix comes from the Memorandum Opinion and Order issued in <u>Vienna Metro LLC v. Pulte Home Corp.</u>, No. 1:10-cv-502, Dkt. 263 (E.D. Va. Aug. 24, 2011), in which the Court accepted the opinion offered by attorney Craig Reilly in establishing the prevailing market rates offered in Northern Virginia. The <u>Vienna Metro</u> matrix provides a certain range of rates that is appropriate for attorneys with varying years of experience and paralegals. The <u>Vienna Metro</u> matrix is reproduced below:

| Range of Hourly Rates in Northern Virginia | | | | | |
|---|---|---|---|---|---|
| Paralegal (or Nonlawyer) | 1-3 years of experience | 4-7 years of experience | 8-10 years of experience | 11-19 years of experience | 20+ years of experience |
| $130-350 | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

The <u>Vienna Metro</u> matrix is applicable in this case, as it has been in other recent civil litigation cases before this Court. <u>See, e.g.</u>, <u>Burke v. Mattis</u>, No. 1:16-cv-1256, 2018 WL 2717225, at *3-4 (E.D. Va. June 4, 2018) (finding the <u>Vienna Metro</u> matrix rates reasonable with some downward adjustment); <u>Hair Club for me, LLC v. Ehson</u>, No. 1:16-cv-236, 2017 WL 1250998, at *8 (E.D. Va. Apr. 3, 2017) (finding the lower end of the <u>Vienna Metro</u> matrix rates

range reasonable); <u>BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.</u>, 234 F. Supp. 3d 760, 770-73 (E.D. Va. 2017) (finding the <u>Vienna Metro</u> matrix rates reasonable), <u>vacated on other grounds by</u> 881 F.3d 293 (4th Cir. 2018). In light of the applicability of the <u>Vienna Metro</u> matrix, the rates of Plaintiff's counsel are reasonable, as the hourly rates of each attorney, law clerk, and project assistant fall within the <u>Vienna Metro</u> matrix. (Woodfield Decl. ¶ 24.)

The sixth <u>Johnson</u> factor is the attorney expectations at the outset of litigation, which is sometimes described to consider the fee arrangement between the attorney and client. Here, there appears to be no significant expectations at the outset of litigation, and Plaintiff's counsel worked under a noncontroversial part-contingent and part-hourly payment basis.

The seventh <u>Johnson</u> factor is the time limitations imposed by the client or circumstances. The discovery schedule in this case aligned with most of the other employment law cases in the Court. Although there were a number of depositions and motions for summary judgment, it was not an unusual amount of litigation for cases before this Court, and the case occurred within the Court's normal discovery period.

The eighth <u>Johnson</u> factor is the amount in controversy and the results obtained. This case's results have been decidedly mixed. Plaintiff did receive a $233,730.28 verdict in her favor on her FMLA retaliation claim, which was the full amount she was seeking, and Plaintiff also received liquidated damages and interest. On the other hand, Plaintiff lost on her FMLA interference claim at summary judgment and, despite the verdict in her favor, Plaintiff did not receive front pay or equitable relief via reinstatement as requested.

The ninth <u>Johnson</u> factor is the experience, reputation, and ability of the attorney. Plaintiff's counsel regularly appears before this Court and all counsel the case are experienced and capable. Further, Plaintiff counsel's experience and ability is appropriately accounted for by

the aforementioned _Vienna Metro_ matrix, which considers an attorney's experience in determining his or her appropriate hourly rate.

The tenth _Johnson_ factor is the undesirability of the case within the legal community in which the suit arose. Nothing about this case has signified any undesirability. Nothing about Plaintiff, Defendant, or the issues involved would make this an undesirable case for any attorney to want to take.

The eleventh _Johnson_ factor is the nature and length of the professional relationship between attorney and client. Here, the attorney-client relationship between Plaintiff and Plaintiff's counsel was ordinary and noncontroversial during the course of representation.

The twelfth and final _Johnson_ factor is attorney's fees awards in similar cases. This factor is accounted for by the Court's aforementioned application of the _Vienna Metro_ matrix, as the Vienna Metro matrix provides a consistent guide for awarding attorney's fees in federal litigation

In summary, the only _Johnson_ factors of significance that would impact the attorney's fees awarded are (1) time and labor expended, (8) amount in controversy and the results obtained, and (12) attorney's fees awards in similar cases. The other factors are not significant and would neither increase nor decrease the attorney's fees awarded. While Defendant asserts that the overall application of the _Johnson_ factors requires a significant reduction in Plaintiff's requested attorney's fees, the Court does not agree. The _Johnson_ factors as applied simply do not support such a drastic overall reduction. Instead, the _Johnson_ factors instead support reducing Plaintiff's overall request by subtracting certain categories of attorney's fees, as some categories of fees represent time and labor expended on unsuccessful claims or fees related to categories that the Court does not award in similar cases.

Defendant has argued that certain categories of attorney's fees, as well as costs, be

10

excluded from Plaintiff's award of attorney's fees and costs. (Def.'s Opp'n to Pet. at 3-4, 7-10; Def.'s Suppl. Opp'n at 2-3; Def.'s Opp'n to Bill at 1-3.) On this point, the Court agrees, at least partially. The Johnson factors, particularly (1) time and labor expended, (8) amount in controversy and the results obtained, and (12) attorney's fees awards in similar cases, justify reducing Plaintiff's request for attorney's fees in certain categories that are not appropriate to award in light of the results obtained and the attorney's fees awards in similar cases. Further, the Court's requirements to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" and "award some percentage of the remaining amount, depending on the degree of success enjoyed" further support the need to reduce Plaintiff's requested award of attorney's fees. McAfee, 738 F.3d at 88 (citations and quotation marks omitted). The Court also considers the reasonableness of the costs requested by Plaintiff alongside her related attorney's fees, in light of FMLA's requirement to award only "reasonable" expert fees and costs. 29 U.S.C. § 2617(a)(3).

The disputed categories of attorney's fees and/or costs include those related to Plaintiff's prior counsel's work, the litigation before summary judgment, Plaintiff's excluded experts, Plaintiff counsel's use of mock juries, Plaintiff's technology services used at trial, Plaintiff's post-trial briefings, and other taxable costs. (Def.'s Opp'n to Pet. at 3-4, 7-10; Def.'s Suppl. Opp'n at 2-3; Def.'s Opp'n to Bill at 1-4.) Plaintiff has not disputed Defendant's computation of her total attorney's fees and costs related to Plaintiff's prior counsel's work, the litigation before summary judgment, Plaintiff's excluded experts, Plaintiff counsel's use of mock juries, Plaintiff's technology services used at trial. Further, both Plaintiff and Defendant have agreed on the amount of attorney's fees and costs related to Plaintiff's post-trial briefings. (Joint Br. at 2.) Therefore, the issue before the Court in evaluating those disputed categories of attorney's fees

11

and costs is whether they should be deducted from the total award in whole or in part. Unless otherwise noted, it is not necessary for the Court to recalculate the total amounts of attorney's fees and costs attributable to those categories. Accordingly, each category of fees and costs contested by Defendant are addressed below.

Defendant argues that Plaintiff's prior counsel's fees should be reduced from Plaintiff's total award for attorney's fees and costs. (Def.'s Opp'n to Pet. at 9.) Before being represented by counsel from TELG, Plaintiff was represented by counsel from Charleson Bredehoft Cohen & Brown, P.C. Plaintiff's prior counsel's fees do not appear to be duplicative of time spent by TELG. Instead, Plaintiff's prior counsel's fees appear to be for services TELG would have performed if it had been Plaintiff's counsel at the time. Accordingly, attorney's fees related to Plaintiff's prior counsel should be included as part of Plaintiff's award of attorney's fees and costs.

Defendant argues that Plaintiff's attorney's fees related to litigation before summary judgment should be reduced to account for Plaintiff's partial failure on her claims at summary judgment. (Def.'s Opp'n to Pet. at 7-9.) Specifically, Defendant argues that Plaintiff's claim for FLMA interference was denied at summary judgment, and that Plaintiff's attempt to receive summary judgment in its favor on Defendant's mitigation of damages defense was unsuccessful. The Court agrees that attorney's fees related to Plaintiff's unsuccessful claims from before summary judgment should be reduced from Plaintiff's overall award of attorney's fees and costs, because, as previously stated, the Court must deduct attorney's fees related to unsuccessful claims. Plaintiff's requested attorney's fees for litigation before summary judgment amount to $88,043.00. The Court finds it appropriate to first reduce that amount by the attorney's fees related to Plaintiff's unsuccessful motion for partial summary judgment on Defendant's

mitigation of damages defense. Upon review of the attorney's fees submitted by Plaintiff, the Court calculates the attorney's fees related to Plaintiff's unsuccessful motion for partial summary judgment to total $6,031.40. The Court next finds it appropriate to reduce the remaining amount of pre-summary judgment attorney's fees, totaling $82,011.60, by half to account for Plaintiff's failure on her FMLA interference claim. Plaintiff did not, and probably could not, break down attorney's fees as to the two counts brought in her complaint up through the time of summary judgment. Regardless, Plaintiff still brought two distinct claims. Defendant has suggested that half the time up through summary judgment was spent on Plaintiff's FMLA interference claim, which was unsuccessful at the summary judgment stage, and that half the time up through summary judgment was spent on Plaintiff's FMLA retaliation claim, which survived summary judgment and was ultimately successful at trial. It is not unreasonable to assume, and Plaintiff has not disputed, that half of the time spent by Plaintiff's counsel up to summary judgment was spent on her unsuccessful FMLA interference claim. Therefore, it is appropriate to further reduce Plaintiff's attorney's fees through summary judgment by half of $82,011.60, or $41,005.80, to represent the attorney's fees related to Plaintiff's unsuccessful FMLA interference claim. Accordingly, a total of $47,037.20, representing the attorney's fees for Plaintiff's unsuccessful motion for partial summary judgment and Plaintiff's unsuccessful FMLA inference claim, should be reduced from Plaintiff's award of attorney's fees and costs.

Defendant argues that the attorney's fees and costs related to its excluded experts, Dr. Bussey and Dr. Morse, should be reduced from Plaintiff's award of attorney's fees and costs. (Def.'s Opp'n to Pet. at 7-9; Def.'s Opp'n to Bill at 1-2.) The Court excluded Dr. Bussey's vocational rehabilitation opinion for being based purely on his unsupported speculation, failing to cite any data or facts in support of his conclusions, and thereby being unreliable and

13

inadmissible. The Court excluded Dr. Morse's economic opinion for being based on Dr. Bussey's flawed vocational rehabilitation opinion, making it likewise unreliable and inadmissible. Although there may be circumstances in which experts were necessary to the preparation for and successful prosecution of claims even though their testimony was not presented at trial, such necessity of the opinions of Dr. Bussey and Dr. Morse is not the case here. Instead, Dr. Bussey's opinion, and in turn, Dr. Morse's opinion, were so flawed that the Court determined that the opinions could not be heard by the jury and were inadmissible. Therefore, all of the attorney's fees and costs related to the opinions of Dr. Bussey and Dr. Morse were of no use or value in preparing a successful claim for Plaintiff at trial. The Court determines now that the opinions of Dr. Bussey and Dr. Morse were so deficient that it would be inappropriate to award fees and costs related to them. Accordingly, the $14,329.90 in attorney's fees related to Plaintiff's excluded experts and $22,593.07 in expert fees and costs should be reduced from Plaintiff's award of attorney's fees and costs.

Defendant argues that the attorney's fees and costs related Plaintiff's mock jury efforts should be reduced from Plaintiff's award of attorney's fees and costs. Although perhaps found to be useful in preparation for trial or settlement, mock jury exercises are certainly not necessary in bringing a successful claim of FMLA retaliation. As previously stated, this case was not particularly unique in nature, and so the Court does not find that a mock jury trial would be of significant benefit. Further, Plaintiff's counsel has been unable to provide, nor has the Court's independent research been able to locate, any binding authority that makes mock jury fees and costs recoverable, or even any case from this Court that has awarded mock jury fees in awards of attorney's fees and costs. Accordingly, the $19,370.80 in attorney's fees and $8,506.28 in related costs for mock jury efforts should be reduced from Plaintiff's award of attorney's fees and costs.

14

While not related to any type of attorney's fees, Defendant argues that the costs for the technology services used by Plaintiff's counsel at trial should be reduced from Plaintiff's total award of attorney's fees and costs. The Court finds the technology services as used by Plaintiff's counsel to be voluminous, excessive, and unnecessary. The trial contained no complicated exhibits which required expert technological services, and it appears that the technology services were mostly used by Plaintiff's counsel to emphasize certain language, which Plaintiff's counsel was reprimanded at trial for doing. Further, Plaintiff did not specifically argue in her briefing any justification for the technology services fees to be included. Accordingly, the $22,213.59 in technology services costs should be reduced from Plaintiff's award of attorney's fees and costs.

Defendant argues that the attorney's fees and costs related to Plaintiff's post-trial issues should be only be partially awarded to Plaintiff in light of the partial success of Plaintiff's post-trial issues. (Def.'s Opp'n to Suppl. Pet. at 1-2; Def.'s Suppl. Opp'n at 3.) The post-trial issues can be described in three distinct categories: (1) the post-trial briefings as directed by the Court on the amount to be awarded by the jury verdict; (2) Defendant's renewed motion for judgment as a matter of law or for a new trial; and (3) Defendant's motion to quash Plaintiff's subpoena to Nixon Peabody LLP. The Court considers each type of post-trial issue and the related attorney's fees and costs in turn.

In her post-trial briefings on the amount to be awarded by the jury verdict, Plaintiff sought liquidated damages, front pay or equitable relief, and interest. The Court did not grant Plaintiff either front pay or equitable relief, but the Court did agree with Plaintiff that she was entitled to liquidated damages and interest. Once again, Plaintiff did not, and probably could not, break down the attorney's fees and costs related to each post-trial argument on the amount to be awarded by the jury verdict. Accordingly, it is appropriate to reduce the attorney's fees related to

15

the briefing on the amount to be awarded by the jury verdict by one-third. Therefore, one-third of the $16,387.50 in attorney's fees related to the post-trial briefings on the amount to be awarded by the jury verdict, or $5,462.50, should be reduced from Plaintiff's award of attorney's fees and costs. However, the Court does not believe it appropriate to reduce costs related to such post-trial briefings.

In another post-trial issue, Plaintiff had to respond to Defendant's motion for judgment as a matter of law or for a new trial. Plaintiff successfully opposed Defendant's motion, as the Court denied Defendant's motion and Defendant was not granted judgment as a matter of law or a new trial. Therefore, it is appropriate to award Plaintiff all of her attorney's fees and costs related to opposing Defendant's motion for judgment as a matter of law or for a new trial.

In the third post-trial issue, Plaintiff had to respond to Defendant's motion to quash Plaintiff's subpoena, which Plaintiff was partially successful in opposing, as the Court denied Defendant's motion with some conditions that still granted Defendant some potential relief. Accordingly, it is appropriate to reduce the attorney's fees related to Defendant's motion to quash by one-half. Therefore, one-half of the $6,959.50 in attorney's fees related to the post-trial briefings on the amount to be awarded by the jury verdict, or $3,479.75, should be reduced from Plaintiff's award of attorney's fees and costs. However, the Court does not believe it appropriate to reduce costs related to the motion to quash.

Lastly, it is appropriate to address Plaintiff's requests for miscellaneous taxable costs. While the Court has previously agreed with Defendant that costs related to Plaintiff's excluded experts should not be awarded to Plaintiff, Plaintiff does seek other taxable costs that have not yet otherwise been addressed. Defendant argues that costs related to the videotaping of depositions and for demonstrative evidence should be excluded from Plaintiff's award of

16

attorney's fees and costs. (Def.'s Opp'n to Bill at 2-3.) However, it appears that such costs were reasonable and necessarily obtained for use in this case. Therefore, with regards to Plaintiff's Bill of Costs, only the costs related to Plaintiff's excluded experts, which were previously accounted for in Defendant's general opposition to awarding expert fees and costs, should be reduced from Plaintiff's overall award of attorney's fees and costs.

## IV. RECOMMENDATION

For the aforementioned reasons, the undersigned U.S. Magistrate Judge recommends that Plaintiff be awarded a total of $395,375.23 in attorney's fees and costs, comprised of $391,590.85 in attorney's fees and $3,784.38 in costs.

The Court's determination on which attorney's fees and costs to award Plaintiff can be summarized by the following table:

|  | **Atty's Fees** | **Costs** | **Total** |
|---|---|---|---|
| Plaintiff's Requested Fees and Costs | $481,271.00 | $57,097.32 | $538,368.32 |
| Minus Reductions for: |  |  |  |
| Partial Failure at Summary Judgment | ($47,037.20) |  |  |
| Excluded Experts Fees and Costs | ($14,329.90) | ($22,593.07) |  |
| Mock Jury Fees and Costs | ($19,370.80) | ($8,506.28) |  |
| Technology Services Costs |  | ($22,213.59) |  |
| Partial Failure on Jury Verdict Briefing | ($5,462.50) |  |  |
| Partial Failure on Motion to Quash | ($3,479.75) |  |  |
| **The Court's Recommended Award** | **$391,590.85** | **$3,784.38** | **$395,375.23** |

## V. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to

28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within

fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives

appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

August          , 2018
Alexandria, Virginia